WILLIAM N. BRUNDAGE and MARY ANN, his wife, *v.* GOOD-
FELLOW.

Injunction allowed to prevent waste by a widow on the lands in her possession as-
signed to her for her dower.

On a bill against a widow in possession of lands assigned to her for her dower, to stay
waste, a decree *pro confesso* was taken, and an order of reference made to a Master
to take an account of the waste done; the order directing, that notice of the time
and place of proceeding before the Master be given to the defendant; which notice
was served; but the defendant did not appear before the Master. The Master's
report was filed September 3, 1850. No rule to confirm the report *nisi* was entered.
On the 9th September, 1850, exceptions to the report were filed. At the December
term, 1850, a motion was made, on the part of the complainants, to strike the ex-
ceptions from the files.

*Held*, that when the order of reference, on a decree *pro confesso*, directs that notice of
proceeding before the Master be given to the defendant, a rule to confirm the report
of the Master *nisi* should be entered on the part of the complainant. Motion de-
nied.

Where a decree *pro confesso* is taken, and a reference to a Master ordered, and no
notice to the defendant to attend the Master is necessary, and no rule to con-
firm his report *nisi* is required, (as by rule 4, article 14 of the rules,) if excep-
tions are filed to the report, it seems, that the complainant may set the cause
down preparatory to further directions or to a final decree; and, if the exceptions
be overruled, may get a final decree at the term at which the cause is so set down.

The bill, filed February 25, 1850, by Wm. N. Brundage and
Mary Ann, his wife, states, that Hezekiah Goodfellow died seized
of certain real estate in Middlesex County, leaving his widow,
Fanny F. Goodfellow, and his children, Mary Ann, one of the
complainants, (and others, naming them.)

That, since the death of the said Hezekiah, the one third part
of the said real estate was assigned and set off to his said widow
as her dower therein. That the said widow then had and still
retains possession of the same.

That the said third part includes about six acres of wood
land; and that the complainant, Mary Ann, with the said other
children of the said Hezekiah, are entitled to the inheritance of
the said third part.

That the said widow has committed great waste, spoil and destruction in and upon the said third part so set off to her for her dower, by cutting down the timber and trees which were standing and growing thereon ; a large quantity whereof, cut up into cord wood, now remains thereon, which she intends to sell. That she has two laborers employed, who are now engaged in cutting down the timber and trees standing on said third part, with intent to sell the same; and that the complainants have been informed and believe, that the said widow intends to procure, or has already procured, another laboror for the purpose of more speedily cutting down the said trees and timber. That she has repeatedly cut down or caused to be cut down trees and timber standing on said third part, and caused the same to be carried off said premises and sold, and has appropriated the proceeds of the sale thereof to her own use. That she hath repeatedly threatened to cut down all the trees and timber standing on said third part and to sell the same, and to remove the buildings standing thereon. And that the complainants have reason to believe, and do believe, that she intends to commit further waste upon said premises by cutting down the wood and timber now growing and being thereon, and selling the same. That she has cut trees and timber from said third part more than sufficient for her own consumption and use, and for the express and avowed purpose of selling the same, and of appropriating the proceeds of the sale thereof to her own use. That the trees and timber which she is now cutting down are not cut down for her own consumption and use, but for the purpose of selling the same for her own benefit. That the said widow is the owner in fee of another and large tract of wood land, situated near her place of residence, and hath no cause or necessity for cutting down any of the trees or timber standing on the said land so assigned to her for her dower as aforesaid. That the same is done by her for the purpose of realising money for her benefit. That the complainants, or one of them, have frequently requested her to desist from cutting said timber and trees, other than such as were necessary and to which she was entitled as her reasona-

ble estovers, for her use and consumption, and to desist from committing waste and destruction.

The bill prays that an account may be taken of the wood and timber which has been cut, and which she has caused to be carried away and sold; and that the said widow may be decreed to pay to the complaimants their proportion of the value thereof; and that she may be restrained by injunction from cutting down or destroying the timber or other trees standing, growing or being on the said third part, and from taking away, or causing to be taken away any wood lying or being on said premises, excepting such wood as she is by law entitled to cut and take as and for her necessary and reasonable estovers, and from selling any wood lying or being on said premises, and from committing any further waste; and for such other and further relief, &c.

The injunction prayed was allowed.

On the 25th of June, 1850, a decree *pro confesso* was taken, on default of appearance, plea, answer or demurrer; and an order of reference to a Master, to take an account of the number and quantity of the trees, wood and timber that had been cut, and which had been carried away and sold, or which the said widow has otherwise disposed of; excepting such parts thereof as she may have used as and for her necessary estovers; and also the value thereof; and, also, what proportion thereof is due to the complainants, as and for their interest therein, in right of the complaimant, Mary Ann Brundage. And that notice of the time and place of such inquiry be given by the complainants or their counsel to the said defendant.

The Master reported, that no evidence was produced before him of the number of trees cut. But he reports, that the defendant has cut upon, and carried away from the said third part sixty cords of cord wood, which she has sold or otherwise disposed of; and that the value thereof is $165. And that the complainants, in right of the complainant Mary Ann, are entitled to one equal fourth part thereof, equal to $41.25.

Notice of the time and place of the inquiry before the Master was served, according to the order of reference in that respect; but the defendant did not appear, nor any person in her behalf.

The Master's report is dated August 31, 1850, and is marked filed September 3d, 1850. No rule to confirm the report *nisi* was entered.

On the 9th of September, 1850, exceptions were filed to the report.

At the December term, 1850, a motion was made, on the part of the complainants, to strike the exceptions from the files.

*A. V. Schenck* in support of the motion.

1st. The exceptions were not set down by the defendant for hearing at this term. 2 *Mad. Ch.* 390; 1 *Newland Ch. Pr.* 345; 1 *Halst. Dig.* 230.

2d. Notice to the defendant to appear before the Master was ordered by the order of reference, and was served; but the defendant did not appear before the Master. 5 *John. Ch.* 78; 1 *Hoff. Ch. P.* 250; 13 *Peters,* 359; 1 *Paige,* 145; 2 *Han. Ch.* 116; 1 *Halst. Dig.* 236; 4 *Barb & Harr. Eq. Dig.* 606, *No.* 16; 3 *John Ch.* 80.

*H. V. Speer,* contra, referred to sec. 4, art. 14, of the rules of the Court; 2 *Green's Ch.* 437.

THE CHANCELLOR. The order of reference, directed that notice of proceeding before the Master be given to the defendant. The case made by the bill was such, that an order for proof, only, might duly have been made, instead of a decree *pro confesso* and an order of reference; though the latter course was proper; and, this course being taken, it was thought proper to require notice to be given to the defendant of the time and place of proceeding before the Master. Notice was given, accordingly, and the defendant did not appear before the Master.

Rule 4 of Art. 14 of the rules provides, that where the complainant's bill shall be ordered to be taken *pro confesso*, and there shall be a reference to a Master ordered, the complainant may proceed before the Master without notice to the defendant, and it shall not be necessary, upon the coming in of the Master's report, to enter a rule to confirm the same *nisi*, or to set the cause down preparatory to further directions or to a final decree, unless directed by the Court, or the report shall be excepted to. Does this dispense with the entry of a rule to confirm the report *nisi* in a case where by the order of reference the complainant was directed to give notice of proceeding before the Master? I am inclined to think it does not. It is not a case under the 4th rule, because the complainant could not proceed before the Master without notice, as provided in that rule, for the reason that the order of reference expressly required notice. Rule 6, Art. 14, shows, that an order to confirm a report *nisi* is not dispensed with by reason of the defendant's having been notified to attend the Master and neglecting to do so; but, only, that the order *nisi* need not in that case be served on the defendant, and that the report shall become absolute of course, unless cause be shown to the contrary. It seems to me that in this case a rule to confirm the report *nisi* should have been entered on the part of the complainant. This was not done. This is sufficient to show that the motion to strike the exceptions from the files cannot prevail.

Having thus disposed of the motion, it is not necessary to express any opinion upon the question which was argued, whether, when exceptions are filed, in a case falling under the 4th rule, it is for the complainant to set the cause down preparatory to further directions or to a final decree, or for the defendant to set down the exceptions to be argued.

Independently of our rules, I think the practice is for the defendant to bring on the hearing on the exceptions. 2 *Mad. Ch.* 390, margin; 1 *Newland's Ch. Pr.* 345. Filing exceptions is not, alone, sufficient cause against making absolute the order to confirm the report *nisi ;* an order for setting down the exceptions to be argued must also be obtained by the defendant; though

it is said, in 1 *Newland,* 345, that either party may obtain this order. Our practice, I think, has been for the defendant to set down his exceptions to be argued. It may be that rule 4, above referred to, has changed the general practice of the Court. And I make a remark or two for the purpose of suggesting the inquiry whether such change has been made by this rule, and of calling the attention of the members of the bar to it.

It seems, from the terms of this rule, that, when the report is excepted to, the complainant cannot get a final decree without setting down the cause preparatory to further directions or to a final decree. The rule says, it shall not be necessary for the complainant to set the cause down preparatory to further directions or to a final decree, unless the report be excepted to. This seems to show that when the report is excepted to, it is for the complainant to set down the cause; and if so, he sets it down, not upon the report only, for if there was nothing but the report it would not be necessary, under this rule, to set the cause down at all, but upon the report and exceptions, preparatory to further directions or a final decree; and in this way, if the exceptions be overruled, the complainant may get a final decree at the term at which the cause is so set down; whereas, if the defendant is first to set down the exceptions to be argued, it would be a question whether the complainant could get a final decree at that term, he having not set the cause down. It may be that, if the defendant sets down his exceptions to be argued, and they are overruled, the case would then stand as a case under this rule in which no exceptions were filed, (considering overruled exceptions as no exceptions,) and that the complainant would then be entitled, under this rule, to his final decree, though he had not set the cause down; or it may be that, notwithstanding the defendant sets down his exceptions to be argued, the complainant may also set the cause down preparatory, &c., at the same term, and so be prepared to take his final decree if the exceptions be overruled.

But it is clear, that if the complainant follows this 4th rule, and, when the report is excepted to, sets his cause down preparatory, &c., he will get his decree at that term if the excep-

tions be overruled.   And it may be that this rule was adopted for the purpose of avoiding the difficulty and delay that might occur, or that was apprehended, from the defendant's being required to set down his exceptions to be argued.   These are mere suggestions.   The motion is denied on the ground first stated.